Leonard C. Hart Nibbrig, Esq.  SBN 148437
455 Capitol Mall, Suite 330-D
Sacramento, CA  95814-4404
Tel. (916) 443-6355; lhartnib@aol.com
Attorney for R.D. Dufour and Dufour Enterprises, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

STEPHEN C. PEHLE,

          Plaintiff,

     vs.

RONALD DAVID DUFOUR;

DUFOUR ENTERPRISES, INC.,

          Defendants

)
)
)
)
)
)
)
)
)
)

Case No.: CIV S-06-1889 MCE EFB

**DEFENDANTS' POST-TRIAL BRIEF**

Defendant RONALD DAVID DUFOUR, as an individual, and DUFOUR ENTERPRISES, INC. dba DUFOUR ELECTRIC & CONSTRUCTION, submits the following post- trial brief.

## STATEMENT OF THE FACTS

What distinguishes this case from other precedents is the self-reporting of work hours, including shop time, travel time, and overtime. While plaintiff argues that he wrote work hours "at the direction of Dufour" (Post-trial brief, at 2:20), the evidentiary record shows that plaintiff and all other employer electricians self-reported their work hours. Plaintiff testified that he, and

not Mr. Dufour, was the person responsible for reporting his daily work hours to defendants. (Tr. Vol. 1, at 71:16-25 : 72:1-3) Mr. Dufour's testimony confirmed that plaintiff self-reported his work hours. (Tr. Vol. 2, 47:12-14; 112:23-24) Plaintiff testified that he reported all of his work hours, including "shop" time. (Tr. Vol. 1 at 42:15-17) In addition to plaintiff's testimony, documents in the record show that plaintiff billed for "shop" time. (Tr. Vol. 2, at 95:3-5; 148:18-25, 149:1-2) Plaintiff testified that the duties he reported as "shop" hours were exactly the same as those he performed to stock the van. (Tr. Vol. 1, at 31:18-20; Tr. Vol. 3, at 180:13-25; 181:1-3) Mr. Dufour confirmed this and testified that "shop" hours were paid at the same rate as electrician services. (Tr. Vol. 3, at 36:13-25; 39:8-17) Plaintiff's self-reported work hours were never deducted by defendants. (Tr. Vol. 1, at 72:4-7; Tr. Vol. 2, at 118:15-17; Tr. Vol. 3, at 31:22-25; 32:1-4; 172:1-3) Travel time from a job site to the shop during the workday was compensated, and no limit set on plaintiff's compensable shop hours. (Tr. Vol. 3, at 72:8-18) Plaintiff testified that he reported his hours on the job while he suffered the after-effects of alcohol intoxication. (Tr. Vol. 1, at 71:2-17)

   Plaintiff provided contradictory testimony as to whether his self-reported work hours included travel time between worksites during the workday, including travel time back to the shop before reporting "shop" hours. (Tr. Vol. 1, at 42:18-21; 61:4-7) Plaintiff admitted that he self-reported travel time between job sites on his time cards, though it was not designated as travel time. (Tr. Vol. 3, at 151:17-24) At one point, plaintiff clearly testified that he was compensated between job sites after reporting to the first job site of the workday. (Tr.Vol. 1, at 46:13-15; 47:1-12) This testimony was confirmed by Mr. Dufour. (Tr, Vol. 2, at 12:22-25; 13:1-11) Indeed, Mr. Dufour testified that the time cards did not exclude travel time for plaintiff's commute from and to plaintiff's home. (Tr. Vol. 2, at 114:22-25-115:1-4; Tr. Vol. 3, at 37:1-5; 38:2-9; 41:6-10)

Although plaintiff testified that he was told to curtail reporting overtime hours, timecards establish that he continued to be paid in full for all overtime hours he reported, even after the alleged discussion to limit his overtime billings. (Tr. Vol. 1, at 64:20-25, 65:1-24) Timecards from specific job sites in evidence show that plaintiff self-reported overtime. (Tr. Vol. 2, at 71:24-25: 72:1-3; 105:4-5,13; 111:6-11; 113:23-24; 123:2; 149:25)

Plaintiff used the employer's all expense paid vehicle by agreement. (Tr. Vol. 3, at 47:16-25; 48:1; 97:12-14) Plaintiff testified that the vehicle was not necessary for his work and that he could do his job without the van. (Tr. Vol. 3, at 152:3-7). And plaintiff's counsel attempted to procure a better answer by re-phrasing the question immediately. (Tr. Vol. 3, at 152, 12-17) In corroboration, Mr. Dufour testified that Dufour Enterprises could have provided plaintiff with a Honda Civic and not a company van, and that providing the van was a perquisite of the job. (Tr. Vol. 2, at 22:2-12; Tr. Vol. 3, at 47:6-13) Plaintiff confirmed that Diaz Automotive of Manteca provided the maintenance services for the company van plaintiff used. (Tr. Vol. 1, at 57:6-9; Tr. Vol. 3, at 23:22-25, 24:1-19)

Mr. Dufour testified that job sites were pre-supplied for the next day by lead electricians, like plaintiff. (Tr. Vol. 3, at 96:20-25) And plaintiff testified that job sites are supplied by vendors at Jepsen Electric, plaintiff's current employer, just as with Central Wholesale in this case. (Tr. Vol. 1, at 80:8-11) Mr. Navarro, the account representative of Central Wholesale, said they delivered supplies to job sites free of charge. (Tr. Vol. 3, at 115:12-14) There was no need for plaintiff to supply the jobsite with materials from the van. (Tr. Vol. 3, at 97:1-8). Plaintiff, Mr. Dufour, and Mr. Navarro confirmed that Central Wholesale supplied the worksites and delivered as part of its services to the employer, that Ronald Dufour delivered supplies to worksites, and that some supplies were transported in the van that plaintiff drove. (Tr. Vol. 1, at 21:9-11; 74:9-

25, 75:1-8; Tr. Vol. 3, at 26:17-25, 27:1-6) And plaintiff testified that he could not tell from Exhibit 6-7 in what manner material was brought to the job site. (Tr. Vol. 1, at 43:5-15) Particularly, the transportation source for material, as opposed to tools, could not be determined by plaintiff in his testimony. (Tr. Vol. 1, at 44:11-15) Mr. Dufour testified that ladders and scissor-lifts were sometimes brought separately to job sites. (Tr. Vol. 2, at 24:8-15) Mr. Dufour testified that gang boxes were locked at the job sites and contained tools and materials, and that ladders could be secured against them. (Tr. Vol. 2, at 24:16-21) Confirming Mr. Dufour's testimony, plaintiff testified that gang boxes and "sea containers" held tools and materials at job sites. (Tr. Vol. 3, at 151:3-13)

   Plaintiff confirmed that he took the van to his home and not to the shop after the last job site of the workday. (Tr. Vol. 1, at 57:2-3) There was conflicting testimony as to how often plaintiff kept the van at his house, and not the shop, after commuting from the last worksite of the workday.  (Tr. Vol. 1, at 57:2-3) Mr. Dufour testified that plaintiff often took the van home overnight. (Tr. Vol. 2, at 29:23-25; 30:1-4) Mr. Navarro testified that he was at the Tracy shop two to five times per week. (Tr. Vol. 3, at 116:23). And Mr. Navarro testified that only Randy Dufour kept his van at the Tracy shop overnight; plaintiff and the other lead electricians took their vans home. (Tr. Vol. 3, at 120:12-19). Mr. Navarro testified that most of his contractor clients' electricians with vans take them home overnight. (Tr. Vol. 3, at 136:3-17). No documentation shows how often plaintiff kept the van overnight at his residence. (Tr. Vol. 3, at 25:7-12) Plaintiff testified that he used the van to purchase material for his side electrician jobs, in addition to his duties for defendants. (Tr. Vol. 1, at 65:25, 66:1-13) Plaintiff stayed at his girlfriend's home overnight with the van. (Tr. Vol. 2, at 89:19-20)

   There was conflicting testimony as to whether plaintiff chose to pick up fellow electricians or if

picking them up was required by the employer. But the plaintiff did not provide written instructions from the employer to pick up coworkers. Nowhere in the record did plaintiff refer to any coworker's name that he picked up. The time cards do not show these commuting pickups. Plaintiff failed to produce any coworker to testify that plaintiff commuted with even a single coworker at the employer's command or at plaintiff's discretion. Plaintiff did confirm that other lead electricians used company vans and that, at times, more than one lead would work the same jobsite. (Tr. Vol. 1, at 56:5-22)

Dufour Enterprises, trying to show the industry standard, established through plaintiff's testimony that his current employer, Jepsen Electric of Livermore does not compensate plaintiff for commuting time and does not provide a Jepsen Electric vehicle for his commute. (Tr. Vol. 1, at 25:5-6; 55:6-18; Tr. Vol. 3, at 168:2-6) The commute has never been paid for by Dufour Enterprises, nor by Ronald D. Dufour's father's electrical contracting business. (Tr. Vol.3, at 23:7-21) Mr. Navarro testified that paying electricians only after they show up at the first job site of the day up to the last job site of the day constitutes the industry standard among his electrical contractor clients. (Tr. Vol. 3, at 128:6-10).

The record shows that Dufour Enterprises, Inc, like other electrical contractors, performed its electrical contracting services throughout the Bay Area and central northern California. (Tr. Vol. 3, at 115:17-18) Mr. Dufour denied going through plaintiff's Exhibit 11-A and determining the locations of plaintiff's work during his 16-month tenure. (Tr. Vol. 2, at18:17-20) Mr. Dufour testified that the lawyers discussed plaintiff's travel time before and after job sites, resisting plaintiff's suggestion that an agreement was reached. (Tr. Vol. 2, at 19:1-4; Tr. Vol. 2, at 59:17-23; 93:16-21) Plaintiff's counsel, in questioning Mr. Dufour, inadvertently highlighted the unreliability of plaintiff's Exhibit 11-A, noting a discrepancy in the location of a job between

that demonstrative exhibit and plaintiff's time card and other inaccuracies. (Tr. Vol. 2, at 40:16-25; 41:1-1; 45:4-17; *see also* Tr. Vol. 2, at 75:11-25; 76:1-25; 77:1-8; 97:10-13104:25; 105:1-15, 23-25;107:16-109:16). Mr. Dufour testified that the records do not establish starting points for the commutes. (Tr. Vol. 2, at 101:1-2)

 This case is unusually old and the testimonial and documentary evidence in the record reflects that. Plaintiff worked for defendants from February, 2005 to June, 2006, approximately one year and four months that began seven years ago. (Tr. Vol. 1 at13:19) Plaintiff filed this action on August 23, 2006. Because of the age of this case and because the term of employment occurred so many years ago, plaintiff and Mr. Dufour relied exclusively on the timecards to recall events of particular days at issue. (Tr. Vol. 1, at 59:21-25, 60:1-16; Tr. Vol. 3, at 25:3-6; 25:16-18; Tr. Vol. 3, at 169:22-25; 170:1) The court confirmed that plaintiff could not recall specific job locations in plaintiff's demonstrative exhibit. (Tr. Vol. 1, at 80: 20-24) Witnesses' testimony showed gaps in recollection due to the age of the case. (Tr. Vol. 2, 102:3; 103:6; Tr. Vol. 3, at 145-147)

 Plaintiff's testimony that he "would have" loaded the van prior to commuting to a worksite is wholly dependent on whether that is reflected in each timecard. (E.g. Tr. Vol. 1, at 19:15-17) Mr. Dufour, likewise, depended on plaintiff's time card entries for "shop" hours to confirm time worked loading the van. (Tr. Vol. 3, at 49:9-12). Likewise, plaintiff's testimony concerning picking up fellow electricians is entirely dependent on that being shown in the timecards. (E.g. Tr. Vol. 1, 20:1-10)

 Plaintiff testified that the principal activities of his duties as an electrician included "installing conduit, pulling wires, installing breakers, and troubleshooting." (Tr. Vol. 1, at 54:1-23)  Mr. Dufour testified that plaintiff supervised personnel, their work, and the progress of the job in his

role as lead electrician. (Tr. Vol. 2, at 25:12-19) Mr. Dufour testified that plaintiff, because he was in charge of the job, determined whom he would pick up on his commute in the van. (Tr. Vol.2, at 28:8-19; 114:1-6) Mr. Dufour denied playing any role in plaintiff's decision whom to pick up on his commute in the company van. (Tr. Vol. 2, at 28:8-19; 44:18-24; 81:21-22; Tr. Vol. 3 at 26:9)

The record shows that plaintiff may have performed electrical contractor work at Dufour's residence when business slowed, was paid his regular rate , and was paid through Dufour Enterprises with a corresponding check and paystub. (Tr. Vol. 2, at 11:9-10; Tr. Vol. 3, at 35:9; at 40:5-17; 169:1-3) Plaintiff has never been given a personal check from Ronald Dufour. (Tr. Vol. 3, at 169: 4-6). The evidence demonstrates that Dufour Enterprises was incorporated in the State of California with articles of incorporation, corporate officers, meeting all legal requirements for an independent legal entity. (Tr. Vol. 2, at 73:21-24) Furthermore, the only loan from Ronald Dufour to Dufour Enterprises, Inc. was repaid by the corporation in full. (Tr. Vol. 3, at 21:9-25;22:1-23

Plaintiff's counsel stated, and the court acknowledged, there is no claim pressed in this trial as to the legality of the wage statements, except insofar as they do not reflect the alleged work time in dispute. (Tr. Vol. 1, at 67:13-25, 68:1-17; Tr. Vol. 3, at 44:23-46:14) Still and yet, plaintiff testified that wage statements were accurate, that he fully understood the wage statements, and that he never raised any question about the accuracy or clarity of the wage statements to his employer during his tenure of employment. (Tr. Vol. 1, at 61:24-25, 62:1-25, 63:1-22)

In the dispute over the admissibility of any of the content of plaintiff's Exhibit 11-A, Robert Fried, defendants' former counsel, executed a declaration directly contradicting plaintiff's counsel's assertion that that exhibit contained stipulated evidence. Mr. Fried declared: "I

consider Exhibit A and the calendar to be subject to Federal Rule of Evidence, Rule 408 and

inadmissible as evidence on the ground that it shows evidence of offers of compromise." (Dckt.

No. 86-1, at 13-14) "At no time during the May 15 meeting, prior to the May 15 meeting, or after

the May 15 meeting, did I or Mr. Dufour 'agree that Mr. Pehle took at least the amount of time

allotted to each day in Exhibit A to travel to and from the relevant job site with Mr. Dufour's

van, equipment, materials, and sometimes other crew members." (Dckt. No. 86-1, at 16-19). This

court thereafter ruled against the admissibility of any of the content of plaintiff's Exhibit 11-A on

November 29, 2011.

## ARGUMENT

Plaintiff has not carried his burden of proof. The court stated for the record on the first day of

trial that, if plaintiff's Exhibit 11-A were not admitted into evidence, plaintiff would be forced to

support his claims by evidence: "And they're going to be going through date by date, item by

item with each of the timesheets and having the plaintiff testify to each of the jobs, and either

that testimony will or will not prove the elements that have to be proven to establish

compensable hours that weren't paid for." (Tr. Vol. 1, at 97:21-25; 98:1-7; *see also* 100:23-25)

And, indeed, on recommencing the trial, this court stated that plaintiff's Exhibit 11-A was not

admissible evidence, and that plaintiff will "have to prove up the contentions through

testimony." (Tr. Vol. 2, at 4:3-4). The defendants hereby object to Tables 1, 2, and 3 appended to

plaintiff's post-trial brief on two grounds: (1) they violate this court's ruling against the

admissibility of plaintiff's Exhibit 11-A, and (2) the contents of those tables are not supported by

the record in evidence.

## Dufour Enteprises paid for travel time, but not commuting time

The evidence shows that Dufour Enterprises paid for travel time between job sites, but not for

commuting time. In <u>Rutti v. Lojack Corporation, Inc.</u>, (9th Cir. 2010) 596 F.3d 1046, the Court of Appeals considered the rule from the Employer Commuter Flexibility Act (ECFA), that employers need not compensate employees for their commute, nor for preliminary or postliminary activities.  (29 U.S.C. sect. 254(a)(2)  For purposes of this section, use of employer's vehicle for travel by an employee for activities which are incidental to the use of the vehicle for commuting shall not be considered part of the employee's principal activities if the use of the vehicle for travel is within the normal commuting area for the employer's business and "*the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.*" (at 1052, *citing 29 U.S.C.sect. 254(a),with emplasis added by the court.*) Here, the evidence shows that the normal commuting area of Dufour Enterprises, Inc. spans the Bay Area, as well as the Sacramento area. The record shows that the electrical contracting industry requires electricians to travel to various job sites to perform their principal activities. In addition, uncontradicted evidence in the record shows that the plaintiff used the Dufour Enterprises van by agreement with the employer.

**This employer imposed few, if any van restrictions or limits on self-reported hours**

 Dufour Enterprises did not restrict the plaintiff's use of the van and did not limit plaintiff's self-reporting of work hours. The employer here allowed the plaintiff to take the van home overnight and to his girlfriend's house, in addition to providing the van for the plaintiff's commute. The record shows that any loading or cleaning of the van was billed, without employer limitation, as "shop" hours and paid at plaintiff's full rate. Thus, off-the-clock activities were delegated to the plaintiff in this case to charge to the employer at the plaintiff's discretion. Plaintiff testified that, after returning from the worksite to the shop, he opened the shop, disabled the alarm, locked the van, secured the building, and went home. (Tr. Vol. 1 at 23:23-24; 24:1; 36:3-4) In other words, plaintiff sometimes parked the van at the shop. The verbose description of this activity suggests

1

2    its *de minimis* importance.

3       In Rutti, the employee cited the employer's restrictions against using the vehicle for personal

4    pursuits and transporting passengers, the requirement that he drive directly from home to work

5    and back, and the requirement that he keep his cell phone on. (Rutti v. Lojack Corp, Inc, at 1053)

6    The court held that off-the-clock activities not compensable because employer vehicle

7    restrictions were not as onerous as those in Adams v. United States, 471 F.3d 1321 (Fed. Cir.

8    2007) and Bobo v. United States, 136 F.3d 1465 (Fed. Cir. 1998). The question is, were other

9    off-the-clock activities principal activities or *de minimis*? Principle activities include any work of

10   consequence performed for an employer no matter when the work is performed. (Rutti v. Lojack

11   Corp, Inc, at 1055, *citing Lindow v. United States, 738 F.2d 1057 (9th Cir. 1984).*) Previously,

12   "principal activities" were defined by whether they were "primarily for the benefit of the

13   employer and his business." (*citing* Owens v. Local No. 169 Assn. of W. Pulp & Paper Workers,

14   971 F.2d 347 (9th Cir. 1992); Armour & Co. v. Wantock, 323 U.S. 126, 132). Now, the

15   definition of *de minimis* obtains: the three-part Lindow test—(1) the practical administrative

16   difficulty of recording the additional time; (2) the aggregate amount of compensable time; and

17   (3) the regularity of the additional work. (Lindow v. United States, 738 F.2d 1057, at 1063).

18   Here, plaintiff self-reported his work hours manually on time cards without difficulty. The

19   aggregate amount of off-the-clock time was never established on the record; and all loading and

20   cleaning of the van was billed as "shop" time and fully compensated by Dufour Enterprises, Inc.

21   Finally, the regularity of additional work beyond that established by the self-reported hours on

22   the time cards was not established by the evidence. For those reasons, the plaintiff's off-the-

23   clock hours did not extend the plaintiff's workday pursuant to the "continuous workday"

24   doctrine.

25

26

Defendants' Post-Trial Brief - 10

**The plaintiff here was only required to report to the first job site of the day**

Unlike the <u>Burton</u> case, the plaintiff here was not required by the employer to report first to the shop, then to the first job site. (<u>Burton v. Hillsborough</u>, (11th Cir. 2011 *not for publication*) 181 Fed. Appx. 829, Westlaw no. 1374493). In <u>Burton</u>, employees were entitled to overtime compensation for time spent driving county-owned vehicle from county-owned parking site to the first worksite of the day, and from the last worksite of the day back to the county-owned parking site because the employees' principal activities included traveling to and from required parking sites and was not *de minimis*. (Portal-to-Portal Act, 29 U.S.C. sect. 251 et seq.) Use of the employer's vehicle for activities incidental to commuting shall not be considered part of employee's principal activities; they must be "integral and indispensable part of" principal activities. (<u>Burton v. Hillsborough</u>, (11th Cir. 2011 *not for publication*) 181 Fed. Appx. 829, Westlaw no. 1374493, *citing* <u>Steiner v. Mitchell</u>, 350 U.S. 247; <u>Dunlop v. City Electric Inc.</u>, 527 F.2d 394, 399). Section 254(a) defines "traveling" as incidental travel, typically in the form of home-to-work and work-to-home and not employer-required travel. (*Id.*, at 834). 29 C.F.R. sect. 785.38 illustrates the distinction between compensable and non-compensable travel: "Where an employee is required to report at a meeting place to receive instruction or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked." In Burton, the county prohibited employees from taking the vehicles home with them. (<u>Burton v. Hillsborough</u>, (11th Cir. 2011 *not for publication*) 181 Fed. Appx. 829, Westlaw no. 1374493, at 836). Here, Dufour Enterprises, Inc. did not impose any similar restrictions on the plaintiff's use of the company van. And Dufour Enterprises, Inc. required the plaintiff only to

commute to the first job site of the day, not any intermediary site before the first job site of the day.

**Plaintiff's commute was normal for the electrical contracting business**

Although commutes to jobsites varied widely, the variation in commuting distances was normal for site-dependent work in the electrical contracting industry. In Chambers v. Sears Roebuck and Co, (5th Cir. 2011 *not for publication*) 428 Fed. Appendix 400, Westlaw no. 23992359, the court ruled that under the ECFA, the "normal commuting area" is defined not by time or distance, but by the "normal commuting area for the employer's business or establishment." (29 U.S.C.254(a)) The court ultimately held that commute time to first service call and home from the final call was not compensable under the FLSA, and Sears appliance technicians' activities in logging into computer scheduling program and plugging computer into telephone line were not compensable under the FLSA. The employer's thirty-five minute commute designation was held reasonable for the appliance repair business. Computer log-on time was ruled de minimis, though "an employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." (Mireles v. Frio Fodds, Inc. , 899 F.2d 1407, 1414 *citing* 29 C.F.R. sect. 785.47).

In Chambers, morning off-the-clock activities included loading and opening boxes of appliance parts into van and removing van trash from the previous day. (Chambers v. Sears Roebuck and Co, (5th Cir. 2011 *not for publication*) 428 Fed. Appendix 400, Westlaw no. 23992359). Evening off-the-clock activities included loading boxes of appliance parts. And here again the court held that transporting tools and parts was not compensable because it related to the commute, not principal activities of the job. Loading the company van was held *de minimis*.

**Pehle gave Dufour Enterprises no notice of alleged off-the-clock activities**

Also, the employer had no actual or constructive notice of employee's working off-the-clock for the incidental activities in Chambers. (Chambers v. Sears Roebuck and Co, (5th Cir. 2011 *not for publication*) 428 Fed. Appendix 400, Westlaw no. 23992359). In the present action, testimonial evidence establishes that Pehle never gave Dufour Enterprises any notice that he was owed compensation for hours worked. (Tr. Vol. 3, at 46:22-24). Indeed, the record shows that the plaintiff determined what hours were on-the-clock, and self-reported many overtime hours and "shop" hours. In Chambers, plaintiff failed to raise a genuine issue of material fact that disputed activities are compensable under the FLSA; therefore, employer's motion for summary judgment was granted. (Chambers v. Sears Roebuck and Co, (5th Cir. 2011 *not for publication*) 428 Fed. Appendix 400, Westlaw no. 23992359)

**Any uncompensated activities were not "integral and indispensable"**

The record shows that the plaintiff's principal activities concerned running conduit and otherwise installing and repairing building electrical systems, not any activities he elected not to report as work hours. In Bonilla v. Baker Concrete Construction, Inc., the court held that airport construction worker time spent traveling was not compensable, and their time spent going through security screening was not compensable. (Bonilla v. Baker Concrete Construction, Inc., (11th Cir. 2007) 487 F.3d 1340). These activities were ruled "preliminary" and "postliminary" activities under 29 U. S. C., section 254(a)(1), *citing* 29 C.F.R.sect. 790.7(f).   In this case, the plaintiff reported his own work hours. The determination of pre- and postliminary activities and their compensability were delegated to the employee. The plaintiff gave the employer no actual or constructive notice of any uncompensated activities. And loading and cleaning the van was reported by the plaintiff and compensated by Dufour Enterprises in full as "shop" time.

**Carrying tools and equipment does not transform this plaintiff's commute time**

Just because this plaintiff drove the van with tools and equipment in it does not transform the commute time to compensable hours.  In <u>Kerr v. Sturtz Finishes, Inc.</u>, 2010 WL 3211946, the plaintiff painter led a crew with his personal truck to various job sites. Employer required transporting coworkers. The motion for summary judgment concerned only "direct commuting time."  And the court granted the motion, holding that carrying tools and equipment does not make direct commuting time compensable.  Critical to the court's ruling was that no heavy equipment transformed the nature of plaintiff's commute. In this case, the evidentiary record shows that Mr. Dufour transported heavy equipment to the job sites with a truck and trailer, including scissor lifts. Mr. Pehle transported material that he loaded during "shop" hours, ladders, and tools, including his personal tools. Central Wholesale supplied the job sites in addition to Mr. Dufour. And to the degree Mr. Pehle loaded material and tools in the van to supply job sites, the plaintiff was fully compensated for all of his reported "shop" time.

**The record shows no individual liability and no wage statement claim**

The evidentiary record demonstrates that Dufour Enterprises was incorporated in the State of California with articles of incorporation, corporate officers, meeting all legal requirements for an independent legal entity. (Tr. Vol. 2, at 73:21-24) Furthermore, the only loan from Ronald Dufour to Dufour Enterprises, Inc. was repaid by the corporation in full. (Tr. Vol. 3, at 21:9-25;22:1-23

Plaintiff's counsel stated, and the court acknowledged, there is no claim pressed in this trial as to the legality of the wage statements, except insofar as they do not reflect the alleged work time in dispute. (Tr. Vol. 1, at 67:13-25, 68:1-17; Tr. Vol. 3, at 44:23-46:14) Nonetheless, plaintiff testified that wage statements were accurate, that he fully understood the wage statements, and that he never raised any question about the accuracy or clarity of the wage statements to his employer during his tenure of employment. (Tr. Vol. 1, at 61:24-25, 62:1-25, 63:1-22)

**CONCLUSION**

 Looking to the evidentiary record, plaintiff failed to carry his burden of proof. The record

shows that Dufour Enterprises paid plaintiff all of the wages plaintiff himself reported, including

shop time, travel time between job sites, overtime, vacation pay, and paid holidays. The

uncontradicted evidence shows that the employer never deducted plaintiff's self-reported work

hours. The record shows that it is industry standard for electrical contractor employers not to pay

for commuting time, though plaintiff's self-reported time cards may have included that time, too.

The employer provided an all expense paid company van to plaintiff for his commute and on-

the-clock travel, a perquisite not afforded plaintiff at his current employer. The record fails to

demonstrate that the employer required plaintiff to load the van before work every morning. The

evidence shows that, when the van needed loading, plaintiff was free to report work hours at his

regular rate of pay for shop time without employer-imposed limit. The testimonial evidence and

the documentary evidence establish that plaintiff did indeed load the van and bill the employer

for shop time. The record is devoid of the identity of even a single coworker picked up on

plaintiff's commute, and never establishes related dates and locations. There is no evidence to

support individual liability in Ronald D. Dufour as an individual. Plaintiff abandoned his wage

statement claims. Nonetheless, Dufour Enterprises, Inc. provided wage statements that complied

with legal standards. (Labor Code, sect. 226(a)(8),(9)).

                              Respectfully submitted,

Dated: March 2, 2012


                              LAW OFFICE OF LEONARD C. HART NIBBRIG
                              Signed: /s/ Leonard C. Hart Nibbrig
                              Leonard C. Hart Nibbrig
                              Attorney for Defendants