IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEPHEN C. PEHLE,[1]

      Plaintiff,                      No. 2:06-cv-1889-EFB

    vs.

RONALD DAVID DUFOUR;
DUFOUR ENTERPRISES, INC.,

      Defendants.              FINDINGS OF FACT AND
_____/      CONCLUSIONS OF LAW

This is an action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201 *et seq.*, with pendent claims under the California Labor Code.[2]  The matter was tried

before the Court on September 13, 2011 and December 5, 6, and 8, 2011.[3]  Plaintiff was

represented by Matthew J. Gauger and Russell Naymark; defendants were represented by

Leonard Hart Nibbrig.  The court's Findings of Fact and Conclusions of Law pursuant to Rule

52(a) of the Federal Rules of Civil Procedure are set forth below.

---

[1] Although the complaint was originally brought on behalf of plaintiff "and others similarly situated" under the Fair Labor Standards Act, the parties confirmed at the final pretrial conference that the only opt-in consent filed was plaintiff Pehle's and that therefore there are no other individuals participating in the action.  *See* Dckt. No. 17 at 2; Dckt. No. 74 at 1, n.1.

[2] This action is before the undersigned pursuant to the consent of the parties.  *See* 28 U.S.C. § 636(c); E.D. Cal. L.R. 305; Dckt. Nos. 75, 76.

[3] In February and March 2012, the parties filed post-trial briefs.  Dckt. Nos. 94-96.

I.      SUMMARY OF CLAIMS AND CONTENTIONS

The primary issue in this case is whether plaintiff, who was an electrician employed by defendants from February 2005 through June 2006, was engaged in compensable work under the FLSA and/or the California Labor Code when he spent time transporting tools, materials, and co-workers to various job sites.  Plaintiff claims that this was working time under the FLSA and California law and was not compensated because it was defendants' policy not to pay for any work time except work on the job sites themselves.  Additionally, plaintiff claims that this policy led to defendants not keeping proper records of working time for compensation purposes.

Defendants claim that they paid plaintiff all of the wages plaintiff himself reported, including shop time, travel time between job sites, overtime, vacation pay, and paid holidays, and that the time for which he now seeks compensation constitutes commute time that need not be compensated.  Defendants also contend that they kept adequate records, and that the record does not support individual liability for Ronald DuFour.

Plaintiff alleges violations of (1) the FLSA, 29 U.S.C. § 207(a); (2) Wage Order 16-2001 and California Labor Code sections 203, 204.3, 510, and 1810 *et seq*.; and (3) California Labor Code section 226.  Plaintiff seeks compensation for all unpaid hours worked, including overtime pay where applicable, and liquidated damages under both the FLSA and the California Labor Code.  Plaintiff also seeks penalties for failure to keep accurate paycheck stubs pursuant to California Labor Code section 226(a).

II.     UNDISPUTED FACTS

As noted in the August 29, 2011 final pretrial order, Dckt. No. 74, the following facts are not in dispute:

1.  Defendants Ronald David DuFour and DuFour Enterprises Inc. dba DuFour Electric & Construction, a California corporation (hereinafter collectively referred to as "defendants"), were the employers of plaintiff Pehle, who was an employee engaged in electrical work.

////

2.  From on or about February 2005 and continuing through June 2006, plaintiff was employed by defendants as an electrician.  Defendants paid plaintiff on an hourly basis.

3.  This case concerns plaintiff's claims for uncompensated time spent during workdays with respect to:  a) starting the day at defendants' shop or yard to retrieve the truck which defendants required to be stored at the shop, but also required to be present at the work site; b) hauling material in the truck to the work site; c) picking up crew members between the shop and the work site; d) caring for defendants' truck and equipment; e) picking up supplies at a third party supply house; and f) transporting tools and materials between specific jobs once the workday begins.

4.  Plaintiff and other employees reported to either the job site or the company yard each day.

5.  Electricians employed by defendants were organized in "crews" of two to four workers.

6.  Plaintiff reported either to the yard maintained by defendants or individual job sites. Reporting times could be 5:00 a.m. or before.

7.  On some workdays, plaintiff would pick up other electricians at a pre-designated spot after reporting to a job.

8.  Plaintiff traveled to job sites in a company truck.

9.  Plaintiff loaded and unloaded supplies from defendants' trucks and picked up supplies for defendants.

10.  Defendants' records consist of time cards kept by individual workers.

11.  There was no separate clock in or clock out system in place at the yard or individual job sites.

12.  Plaintiff was responsible for keeping complete and accurate records of the time he worked.

////

3

13.  DuFour Enterprises maintained documents that show the time of day that defendants began crediting plaintiff for compensable time each day based on the time cards submitted by plaintiff.

14.  Plaintiff reported to the yard on a daily basis.  On rare occasions he reported directly to the job.

15.  When plaintiff reported to the yard, he was required to do so by defendants.

16.  When plaintiff would pick up other electricians at pre-designated spots on the way to the yard or to a job, he was authorized to do so by defendants.

17.  When electricians such as plaintiff traveled to the job site in defendants' trucks, they were never paid for this travel or work because it was defendants' policy and practice to pay them only when they were actually at the job site.

18.  When plaintiff traveled back to designated points to drop off some of the crew, plaintiff continued on to defendants' yard at the end of the day.  He performed various indispensable tasks on the trip back to the yard and at the yard, such as retrieving parts and supplies, purchasing fuel, performing minor maintenance on the truck, storing equipment at the yard and securing the yard.

19.  Plaintiff performed the above-described work off the clock on most working days.

III.    ADDITIONAL FINDINGS OF FACT

Ronald DuFour is the sole owner of DuFour Enterprises, Inc.  Tr. 112.[4]  He is also the sole officer of DuFour Enterprises, Inc.; he retains with his brother, Randy DuFour, the power to hire and fire employees; he personally hired and supervised plaintiff; he set plaintiff's rate of pay and signed plaintiff's paychecks; he made the decision not to pay plaintiff for travel time

---

[4] Although the trial transcript comprises four separate docket entries, all pages of the transcript are numbered consecutively.  *See* Dckt. No. 81 (Sept. 13, 2011 proceedings, pp. 1-104); Dckt. No. 91 (Dec. 5, 2011 proceedings, pp. 105-255); Dckt. No. 92 (Dec. 6, 2011 proceedings, pp. 256-436); Dckt. No. 93 (Dec. 8, 2011 proceedings, pp. 437-495).  Accordingly, references herein to the transcript are to that consecutive pagination.

4

between the shop and the job sites; he oversaw the maintenance of plaintiff's employment records; he controls the spending of DuFour Enterprises, Inc.; he determines how to comply with labor standards; he decides what jobs to bid on and how much to bid for a particular job; and he has loaned money to DuFour Enterprises, Inc. and vice versa.  Tr. 113-17.

While employed by defendants, plaintiff completed his own timesheets on a daily basis at defendants' direction.  Tr. 11-13, 70.  When plaintiff was first hired, Mr. DuFour instructed plaintiff to account on his timesheets only for time spent at job sites or between job sites, since the company did not pay for travel time before arriving at the first job site of the day or after leaving the last job site of the day.  Tr. 22.  As a result, except on the rare occasions when plaintiff expressly claimed his "shop" time on his timesheets,[5] plaintiff did not record and was not paid for any time at defendants' shop, travel time going to the first job of the day, or travel time returning from the last job of the day.  Tr. 16, 22, 32, 40, 426.  Plaintiff's self-reported work hours were never deducted by defendants.  Tr. 70.  Also, travel time between job sites and travel time from a job site to the shop during the workday was compensated, and no limit was set on plaintiff's compensable shop hours.  Tr. 325, 425.

Nearly every day plaintiff worked for defendants, he would drive his own vehicle to the shop.  Tr. 17.  When plaintiff would arrive at the shop at the beginning of the workday, he would unlock the shop, turn off the alarm, enter the building, load a company van with tools of the trade and materials, and would then depart to the job site.  Tr. 17, 32.  Most of the time, Mr. DuFour would not arrive at the shop at the beginning of the workday, and instead would meet his employees at the job site.  DuFour Dep., Pl.'s Ex. 12 at 72.

As an electrician for defendants, plaintiff would, among other things, install conduit, pull wire, install breakers, and troubleshoot.  Tr. 52.  The material and tools that plaintiff required to perform those duties at the job site were transported either by plaintiff or Mr. DuFour from the

---

[5] Plaintiff is not seeking compensation for "shop" time for which he was already compensated.

shop in company vehicles or were delivered by supply houses.  Tr. 19.  The material and tools

consisted of wire, electrical boxes, connectors of various sizes, couplings of various sizes,

conduit, fish tapes for pulling wire, drills, ladders, plaintiff's own personal tools, and other

company tools.  Tr. 19-20.  Plaintiff also transported his personal tools to the job site for use on

the job; such tools included screwdrivers, hammer, lineman's pliers, strippers, needlenose pliers,

different sized nut drivers, and power tools including an impact gun for screwing boxes to studs,

a power drill, a flashlight, and a Sawzall saber saw.  Tr. 19-20.  The van plaintiff drove to the job

site each work day contained slide-out bins which held various pipe fittings, screws, wire, and

wire connectors that were often needed at the job site.  Tr. 345-46.

At the beginning of nearly every work day, pursuant to Mr. DuFour's instructions and the

needs of the particular job, plaintiff loaded material that was needed at the job site that day into

defendants' van, and at the end of every workday, he unloaded any debris or material he had

brought from the job site.  Tr. 29-30, 32.  Mr. DuFour would instruct plaintiff to transport

material in the van to the job site verbally or by creating written material lists, or the blueprints

for the job would indicate the necessary materials to be transported.  Tr. 29-30, 71; *see also* Pl.'s

Ex. 6-7.  Plaintiff's Exhibit 6-7 indicates materials used at a particular job site, and plaintiff

testified that he would have brought some of those materials to the job site in the van, including

a hole hog, three-inch hole saw, extension ladders, one-inch strut straps, 50-foot deep struts, one-

inch, half-inch, three-quarter EMT connectors, and couplings.  Tr. 40-42, 80-82.

As a lead electrician for defendants, plaintiff ran a crew without Mr. DuFour or any other

leads present on approximately 30 to 40% of the jobs.  Tr. 72.  Plaintiff was responsible for the

correct material arriving at the job site for the electrical work.  Tr. 72.  If the necessary material

was not present at the job site, plaintiff would either pick up material from a supply house or he

would take necessary materials from the stock at the shop.  Tr. 71-73.  Plaintiff would typically

transport anything and everything in the company van with regard to materials.  Tr. 73-74.

////

1  Neither Mr. DuFour nor any of defendants' other employees ever told plaintiff not to transport

2  material in the company van.  Tr. 74.

3      Plaintiff often drove the van to pick up materials from Central Wholesale for use at the

4  job site.  Tr. 82, 308-11, 316, 410-11, 414, 432.  When plaintiff picked up items from Central

5  Wholesale, he loaded them into defendants' van and eventually took the items to the job site.  Tr.

6  318.  If material was needed for a job the following day, plaintiff would often call in an order to

7  Central Wholesale as he was on the road and would then retrieve the material.  Tr. 426.  Plaintiff

8  would load the material into the van, take the van back to the shop, and leave for the evening.

9  Tr. 426.  When plaintiff was assigned to a job site in Sacramento, Mr. DuFour would call in

10  material that plaintiff would pick up and then bring to the job site the following day.  Tr. 426-27.

11  Plaintiff never retrieved material for defendants from Central Wholesale in his personal vehicle;

12  he only did so in defendants' van.  Tr. 416.

13      Approximately ninety percent of the time, on the way to the job site, plaintiff would pick

14  up other electricians to transport them to the job site.  Tr. 18, 128-30.  Mr. DuFour was aware of

15  this practice and never objected to it.  Tr. 130.  In fact, Mr. DuFour made the decision for

16  plaintiff to pick up personnel in the van on each occasion it was done.  Tr. 417.  Depending on

17  the location of the job site in relation to the shop, Mr. DuFour would assign the crew working in

18  Livermore or in Sacramento, or the crew would come from Livermore to the shop to be

19  transported in the van by plaintiff.  Tr. 417-18.

20      The testimony and exhibits offered at trial confirmed that the table that is attached to

21  plaintiff's post-trial reply brief as Table 1 accurately indicates the job site date, location, and

22  driving time between the shop and the job site on every day of plaintiff's employment for which

23  plaintiff is claiming compensation and accurately estimates the amount of uncompensated time

24  ////

25  ////

26  ////

1  on each of those dates.[6]  *See* Dckt. No. 96-1.

2  IV.    CONCLUSIONS OF LAW

3       A.  Jurisdiction and Venue

4       This court has jurisdiction pursuant to § 16(b) of the Fair Labor Standards Act, 29 U.S.C.

5  § 216(b) ("FLSA"), as well as 28 U.S.C. §§ 1331 and 1367.  Venue is proper pursuant to 28

6  U.S.C. § 1391.

7       B.  Individual Liability for Defendant Ronald DuFour

8       Plaintiff argues that defendant Ronald DuFour is individually liable under the FLSA

9  since he was plaintiff's "employer," and is individually liable for plaintiff's claims under the

10  California Labor Code since he is an alter ego of defendant DuFour Enterprises, Inc.  Dckt. No.

11  94 at 21-22.[7]  Defendants disagree, arguing that the record does not support individual liability

12  for Mr. DuFour since DuFour Enterprises, Inc. meets all of the legal requirements for an

13  independent legal entity, and the only loan Mr. DuFour ever made to DuFour Enterprises, Inc.

14  was repaid by the corporation in full.  Dckt. No. 95 at 14.

15            1.  Liability Under the FLSA

16       As an initial matter, the parties' joint statement of undisputed facts and the final pretrial

17  order incorporating those facts establish that both Mr. DuFour and DuFour Enterprises Inc.

18  "were the *employers* of Plaintiff Pehle, who was an employee engaged in electrical work."  Dckt.

19  No. 74 at 3 (emphasis added).  Moreover, Mr. DuFour was plaintiff's "employer," as that term is

20

21  _____

22       [6] Although defendant objects to the tables attached to plaintiff's post-trial briefs because
they violate the court's earlier ruling against the admissibility of plaintiff's Exhibit 11-A and
because the contents of those tables are not supported by the record in evidence, *see* Dckt. No.

23  95 at 8, the tables are not adopted herein as evidence.  Instead, Revised Table 1 summarizes the
evidence and testimony offered at trial.  Revised Table 2, Dckt. No. 96-2, summarizes Mr.

24  DuFour's admissions regarding the amount of time it would take to travel to each of the job sites
at issue.

25
       [7] For ease of reference, all page numbers cited herein, except those citing to the trial

26  transcript, refer to the page numbers assigned by this court's case management and electronic
case filing (CM/ECF) system, rather than the page numbers assigned by the parties.

defined in the FLSA.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d).  The definition of "employer" under the FLSA "is to be given an expansive interpretation." *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999).  "Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the [FLSA]." *Id.* at 1012.

To determine whether an individual is an employer under the FLSA, the Ninth Circuit applies a four-factor "economic reality" test that considers: "Whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 1001-02, 1012.  Thus, an individual officer, director, or supervisor may be held liable as an employer under the FLSA where the evidence supports a determination that the individual exercised economic and operational control over the employment relationship.  *Lambert*, 180 F.3d at 1012 (CEO and COO properly deemed employers under the FLSA where they had a significant ownership interest as well as operational control of significant aspects of the company's day-to-day functions, the power to hire and fire employees, the power to determine salaries, and responsibility for maintaining employment records); *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (finding that a defendant responsible for handling labor and employment matters, who also held 30% ownership over a company, was an "employer" under the FLSA); *Biggs v. Wilson*, 1 F.3d 1537, 1538 (9th Cir. 1993) (finding that a state's failure to issue state employees' paychecks until after a state budget was passed by the legislature and signed by the Governor demonstrated the "economic reality" of being a state employee, and was therefore a violation of the FLSA); *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007) (corporation's president personally liable where he had ultimate

control over business' day-to-day operations and was the corporate officer principally in charge of directing employment practices); *Ulin v. ALAEA-72, Inc.*, 2011 WL 723617, at *11 (N.D. Cal. Feb. 23, 2011) (finding an individual personally liable as an employer under the FLSA when the individual "was responsible for posting, calculating, measuring, estimating, recording, or otherwise determining the hours worked by Plaintiff, and wages paid him," and "authorized and issued payments to Plaintiff, supervised Plaintiff's work, and was responsible for recruiting, hiring, firing, disciplining, assigning jobs and setting wages for Plaintiff"); *Solis v. Best Miracle*, 709 F. Supp. 2d 843, 847 (E.D. Cal. 2010) (finding that a manager who had the authority to hire and fire employees, instructed employees to falsify their time cards, maintained employment records, filled out time and wage sheets, signed paychecks, and "paid all the bills" was an "employer" under the FLSA).

Here, the undisputed evidence shows that Ronald DuFour exercised economic and operational control over the employment relationship with plaintiff.  He is the sole owner of DuFour Enterprises, Inc., is the sole officer of DuFour Enterprises, Inc., and holds the title of president.  He also had the power to hire and fire employees; he hired and supervised plaintiff; he set plaintiff's rate of pay and signed plaintiff's paychecks; he made the decision not to pay plaintiff for travel time between the shop and the job sites; he oversaw the maintenance of plaintiff's employment records; he controls the spending of DuFour Enterprises, Inc.; he determines how to comply with labor standards; and he decides what jobs to bid on and how much to bid for a particular job.  Therefore, he was plaintiff's "employer," as that term is defined in the FLSA, and is subject to individual liability for plaintiff's asserted FLSA claims.

### 2. Liability Under California Law

Plaintiff also argues that Mr. DuFour is an alter ego of defendant DuFour Enterprises, Inc. and is therefore individually liable for plaintiff's claims under the California Labor Code.

////

////

1    "The California Supreme Court has held that a corporate officer cannot be liable for the

2    wage and hour violations of the corporation on the basis of his status alone." *Ontiveros v.*

3    *Zamora*, 2009 WL 425962, at *5 (E.D. Cal. Feb. 20, 2009) (citing *Reynolds v. Bement*, 36 Cal.

4    4th 1075 (2005)).  However, a corporate agent may be liable to an employee on an alter ego

5    theory or where a statute expressly provides for it.  *Reynolds*, 36 Cal. 4th at 1089 & n.10.

6         Under an alter ego theory, the stockholders of a corporation may be individually liable

7    where it would be equitable to do so.  *Assoc. Vendors, Inc. v. Oakland Meat Co., Inc*., 210 Cal.

8    App. 2d 825, 837 (1962).  Generally, alter ego liability is considered equitable where there is a

9    unity of interests and ownership between the corporation and the individual and if the

10   corporation alone were held liable, there would be an inequitable result.  *Id*.  "Factors that courts

11   have found militated towards finding alter ego liability include commingling of assets, treatment

12   of the assets of the corporation as the individual's own, failure to maintain corporate records,

13   employment of the same employees and attorneys, undercapitalization, and use of the

14   corporation as a shell for the individual." *Ontiveros*, 2009 WL 425962, at *7 (citing *Assoc.*

15   *Vendors, Inc.*, 210 Cal. App. 2d at 838-40) (collecting cases).  "Conclusory allegations of 'alter

16   ego' status are insufficient . . . .  Rather, a plaintiff must allege specifically both of the elements

17   of alter ego liability, as well as facts supporting each." *Neilson v. Union Bank of Cal.*, 290 F.

18   Supp. 2d 1101, 1116 (C.D. Cal. 2003) (citations omitted).

19        Here, plaintiff has adequately established that there is a unity of interests between Mr.

20   DuFour and DuFour Enterprises, Inc., since Mr. DuFour is the sole owner and officer of DuFour

21   Enterprises, Inc., and since he also dictates the day-to-day business of the corporation, including

22   determinations regarding wage and hour policies.  However, plaintiff has not demonstrated that

23   failure to impose alter ego liability would lead to an inequitable result.  He has not established

24   that the corporation is undercapitalized, lacks corporate assets, is a shell that was created to

25   avoid personal liability, or any other facts that suggest that it would be inequitable to hold only

26   the corporate defendant liable.  Plaintiff only states in a conclusory manner that "treating the acts

by Mr. Dufour as the acts of his corporation alone would lead to an inequitable result."  Dckt. No. 96 at 13; *see Neilson*, 290 F. Supp. 2d at 1117 (pleading failed to allege injustice prong of alter ego theory where it stated that it would suffer an inequitable result but "fail[ed] to allege facts supporting this statement"); *Hibbs–Rines v. Seagate Tech., LLC*, 2009 WL 513496, at *5 (N.D. Cal. 2009) ("[A] court is not bound to accept as true a legal conclusion couched as a factual allegation.") (quotation omitted); *Virtualmagic Asia, Inc. v. Fil–Cartoons, Inc*., 99 Cal. App. 4th 228, 245 (2002) ("[A]lter ego will not be applied absent evidence that an injustice would result from the recognition of separate corporate identities, and '[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy this standard.'") (quoting *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000)).  Therefore, plaintiff has not established that Mr. DuFour should be held individually liable for plaintiff's claims under the California Labor Code.[8]  *See Ontiveros*, 2009 WL 425962, at *7; *Orosa v. Therakos, Inc*., 2011 WL 3667485 (N.D. Cal. Aug. 22, 2011).

   C.  Plaintiff's First Cause of Action for Violation of the FLSA

   The FLSA states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times [his] regular rate . . . ."  29 U.S.C. § 207(a)(1).  In the event that an employee is not paid all of his or her minimum wages and/or overtime compensation, the employee may bring suit to collect the outstanding amount and to collect an additional, equivalent amount in liquidated damages. *Id*. § 216(b).  "In a suit brought under the FLSA, the employee has the burden of proving that the employee was not properly compensated for work performed."  *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998).

---

   [8] Since the only argument plaintiff makes in support of individual liability for Mr. DuFour on plaintiff's California Labor Code claims is that he is the alter ego of DuFour Enterprises, Inc., the court declines to address whether there are alternate bases for holding Mr. DuFour individually liable for those claims.

Plaintiff contends that he should have been compensated under the FLSA for time spent transporting tools, materials, and sometimes workers to job sites since defendants directed plaintiff to engage in such travel for defendants' benefit and since the travel in question was integral and indispensable to plaintiff's principal electrician duties.  Dckt. No. 94 at 5, 10-19.

Defendants disagree, arguing that plaintiff has not carried his burden of proof because plaintiff has not established the regularity of additional work beyond the hours that plaintiff self-reported on his time cards.  Dckt. No. 95 at 8, 10.  Defendants also argue that they properly paid for plaintiff's travel time but not his commute time, that the normal commuting area of Dufour Enterprises, Inc. spans the Bay Area, as well as the Sacramento area, and that plaintiff used the Dufour Enterprises van by agreement with defendants.  *Id.* at 9.  Additionally, according to defendants, they imposed few, if any, limitations on use of the van or on the number of hours plaintiff self-reported.  *Id.*  Defendants contend that any loading or cleaning of the van was billed, without employer limitation, as "shop" hours and were paid at plaintiff's full rate.  *Id.* "Thus, off-the-clock activities were delegated to the plaintiff in this case to charge to the employer at the plaintiff's discretion."  *Id.*  According to defendants, plaintiff's testimony that after returning from the worksite to the shop, he opened the shop, disabled the alarm, locked the van, secured the building, and went home, really just amounts to parking the van at the shop, and that is de minimis activity for which compensation is unnecessary.  *Id.*

Defendants further contend that plaintiff was not required to report to the shop at the start of the day, and instead was only required to report to the first job site of the day, and that plaintiff's commute was normal for the electrical contracting business.  *Id.* at 11, 12.  According to defendants, any uncompensated activities were not integral or indispensable to plaintiff's principal activities of "running conduit and otherwise installing and repairing building electrical systems," and argue that carrying tools and equipment does not transform plaintiff's commute time into compensable work time.  *Id.* at 13, 14.  Finally, defendants also contend that plaintiff did not give defendants any notice of the alleged off-the-clock activities.  *Id.* at 13.

1    The FLSA broadly defines "hours worked" to include: "(a) All time during which an

2    employee is required to be on duty or to be on the employer's premises or at a prescribed

3    workplace and (b) all time during which an employee is suffered or permitted to work whether or

4    not he is required to do so."  29 C.F.R. § 778.223; 29 U.S.C. § 203(g); *Forrester v. Roth's I.G.A.*

5    *Foodliner, Inc*., 646 F.2d 413, 414 (9th Cir. 1981).  "All time spent by an employee performing

6    an activity for the benefit of an agency and under the control or direction of the agency is 'hours

7    of work.'"  5 C.F.R. § 551.401(a) ("Such time includes: (1) Time during which an employee is

8    required to be on duty; (2) Time during which an employee is suffered or permitted to work; and

9    (3) Waiting time or idle time which is under the control of an agency and which is for the benefit

10   of an agency.").

11          All activities which are "an integral and indispensable part of the principal activities" for

12   which covered workmen are employed, including the donning and doffing of specialized

13   protective gear either before or after the regular work shift, are compensable under the FLSA.

14   *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (holding that time spent by private employees at a

15   battery plant changing clothes and showering before and after shifts was compensable because

16   the activities were necessary to protect the workers from toxins in the workplace); *see also IBP,*

17   *Inc. v. Alvarez*, 546 U.S. 21, 37-42 (2005) (time spent by meat processing plant employees

18   walking between locker rooms and production areas after donning special safety gear in the

19   locker rooms is compensable, as it is time employees spent waiting to doff protective clothes

20   because that time was not a "preliminary or postliminary activity" excluded from FLSA

21   coverage by the Portal-to-Portal Act).

22          However, time spent "walking, riding, or traveling to and from the actual place of

23   performance of the principal activity or activities which such employee is employed to perform,"

24   and "activities which are preliminary to or postliminary to said principal activity or activities"

25   are not compensable under the FLSA.  29 U.S.C. § 254(a) (Portal-to-Portal Act); *see also IBP,*

26   *Inc. v. Alvarez*, 546 U.S. at 40 (time spent by meat processing plant employees waiting to don

14

protective gear at the start of the work day is not compensable).  Additionally, no compensation
is required under the FLSA for duties and activities that are "de minimis" in nature.  *Anderson v.
Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) ("When the matter in issue concerns only a
few seconds or minutes of work beyond the scheduled working hours, such trifles may be
disregarded."); *Bobo v. United States*, 136 F.3d 1465, 1468 (Fed. Cir. 1998) (upholding the
denial of INS Agents' claim for compensation for commuting time, because although certain of
the duties and activities alleged to take place during the commute were theoretically
compensable under the FLSA and not exempted by the Portal-to-Portal Act, no compensation
was warranted because the duties and activities were de minimis in nature).  To determine
whether the work underlying a compensation claim is de minimis, trial courts should consider
"(1) the practical administrative difficulty of recording the additional time; (2) the aggregate
amount of compensable time; and (3) the regularity of the additional work."  *Lindow v. United
States*, 738 F.2d 1057, 1063 (9th Cir. 1984).

   The fact that an employer provides a car for the employee's use in commuting to and
from work does not make the commute time compensable.  29 U.S.C. § 254(a)(2) ("For purposes
of this subsection, the use of an employer's vehicle for travel by an employee and activities
performed by an employee which are incidental to the use of such vehicle for commuting shall
not be considered part of the employee's principal activities if the use of such vehicle for travel
is within the normal commuting area for the employer's business or establishment and the use of
the employers vehicle is subject to an agreement on the part of the employer and the employee or
representative of such employee."); *see also Adams v. United States,* 471 F.3d 1321, 1326-28
(Fed. Cir. 2006); *Rutti v. LoJack Corp., Inc*., 596 F.3d 1046, 1051, 1059 (9th Cir. 2010) (time
employee spent driving to and from job sites in vehicle his employer provided was not
compensable even if it was a condition of employment).  Similarly, workers are not entitled to
pay under the FLSA while riding an employer-provided bus to and from the work site, even if
the employer requires them to do so.  *Bonilla v. Baker Concrete Const., Inc*., 487 F.3d 1340,

1343 (11th Cir. 2007) ("[E]ven mandatory travel time is exempted from compensation under the Portal-to-Portal Act."); *Smith v. Aztec Well Servicing Co.,* 462 F.3d 1274, 1288 (10th Cir. 2006) (oil rig workers required to meet at a central location and carpool to oil well sites with coworkers).

In *Burton v. Hillsborough County,* 181 Fed. Appx. 829 (11th Cir.2006) (unpublished), the Eleventh Circuit held that because the county employees' duties required them to drive county vehicles to and from various public works locations and to always return the county vehicle to a secured county facility overnight, the time the employees spent driving from the secured county location to the various work sites was compensable under the FLSA. The court determined that picking up and delivering the county vehicles to the county lots was integral and indispensable to the employees' principal activities. *Id.* at 837. In addition, the court found that the vehicles served as satellite offices for those employees to do their jobs at the various sites and tools necessary for the work were locked in the county vehicle. *Id.* Driving the vehicles was not merely part of the employees' commute to the principal place of performance but rather, was an aspect of that job performance. *Id.; see also Silas v. Hillsborough County, Florida,* 2006 WL 3133026 (M.D. Fla. Oct. 30, 2006).

Here, the parties' undisputed facts establish that plaintiff traveled to job sites in a company vehicle and that he loaded and unloaded supplies from defendants' trucks and picked up supplies for defendants. The undisputed facts also establish that plaintiff reported to defendants' shop on a daily basis (only on rare occasions did he report directly to a job site), and that he reported to the shop because he was required to do so by defendants. On some workdays, plaintiff would pick up other electricians at pre-designated spots on the way to the yard or to a job, and was authorized to do so by defendants. When plaintiff traveled back to designated points to drop off some of the crew, plaintiff continued onto defendants' yard at the end of the day, where he performed various indispensable tasks, such as retrieving parts and supplies, purchasing fuel, performing minor maintenance on the truck, storing equipment at the yard, and

1  securing the yard.  Plaintiff performed that work on most working days.  According to the

2  undisputed facts, when plaintiff traveled to the job site in defendants' trucks, he was never paid

3  for that travel or work because it was defendants' policy and practice to pay employees only

4  when they were actually at the job site.

5          In addition to the parties' undisputed facts, the evidence presented at trial established that

6  plaintiff began his day by picking up the materials and tools necessary for that day's work at

7  defendants' shop and/or a supply house and loading them into defendants' van, and then driving

8  those materials and tools to the job site.[9]  Plaintiff also regularly drove defendants' van to pick

9  up other employees who were needed at the job site.  At the end of the day, plaintiff would often

10 drop off those employees and would then drive defendants' van back to defendants' shop to

11 unload material and/or debris from the van.  Although the majority of the materials for the

12 projects on which plaintiff worked were delivered to the worksite by an electrical supply house,

13 much of the rest of it, including necessary tools, was brought to the job by plaintiff.  Plaintiff

14 would have been unable to perform his duties without the material, tools, and often employees he

15 transported to the job sites.[10]  Defendants knew that plaintiff was using the van to provide the

16 necessary tools and materials to his job sites and often directed plaintiff to do so.

17 ////

18

19          [9] Although defendants contend that plaintiff would drive from his home in Tracy, rather

20 than from the shop, to the job sites, plaintiff lived in Tracy near the shop and would still need to
   drive the van to transport materials and tools.  *See* Tr. 17.

21          [10] Plaintiff did testify at one point that the van was not necessary for his work and that he

22 could do his job without the van.  Tr. 405.  Mr. DuFour also corroborated that testimony by
   testifying that they delivered supplies to job sites free of charge.  Tr. 368.  Nonetheless, the court

23 since Central Wholesale was supposed to deliver materials directly to the job site.  Tr. 123-124,
   277, 279, 300, 349.  Additionally, Mr. Navarro, the account representative of Central Wholesale,

24 testified that they delivered supplies to job sites free of charge.  Tr. 368.  Nonetheless, the court
   finds that, based on the overall evidence and testimony presented at trial, plaintiff's regular

25 transport of materials, tools, and sometimes employees in defendants' van was necessary for his
   job as an electrician for defendants.  Whether a means other than the van could have been used to

26 supply the job site with the materials, tools, and other employees, those items and personnel
   supplied by the van were integral and indispensable to the completion of the job.

1    Accordingly, the court finds that the time plaintiff spent at defendants' shop and traveling

2  between defendants' shop and the job sites is compensable since it was for defendants' benefit

3  and was under defendants' control and direction.  Loading the van at the shop and/or supply

4  house and driving it to the job sites, and then returning the van to the shop at the end of the day,

5  were "integral and indispensable" parts of plaintiff's principal activities as an electrician for

6  defendants, and were neither "preliminary or postliminary activities."  Nor were those activities

7  de minimis in nature.  Therefore, plaintiff should have been compensated for the time spent

8  conducting those activities.

9          1. Compensable Hours Worked

10    Plaintiff has also met his burden of proving the amount of time that should have been

11  compensated but was not.  "In view of the remedial purpose of the FLSA and the employer's

12  statutory obligation to keep proper records of wages, hours and other conditions and practices of

13  employment, [an FLSA plaintiff's burden of proving that he performed work for which he was

14  not properly compensated] is not to be 'an impossible hurdle for the employee.'"  *Ulin v. ALAEA-*

15  *72, Inc.*, 2011 WL 723617 (N.D. Cal. Feb. 23, 2011) (quoting *Anderson v. Mt. Clemens Pottery*,

16  328 U.S. 680, 687-88 (1946)).  "[W]here the employer's records are inaccurate or inadequate

17  and the employee cannot offer convincing substitutes, . . . the solution . . . is not to penalize the

18  employee by denying him any recovery on the ground that he is unable to prove the precise

19  extent of uncompensated work.  Such a result would place a premium on an employer's failure to

20  keep proper records [and] would allow the employer to keep the benefits of an employee's labors

21  without paying due compensation as contemplated by the [FLSA]."  *Brock v. Seto*, 790 F.2d

22  1446, 1448 (9th Cir. 1986) (quoting *Anderson*, 328 U.S. at 688).

23    "[A]n employee has carried out his burden if he proves that he has in fact performed

24  work for which he was improperly compensated and if he produces sufficient evidence to show

25  the amount and extent of that work as a matter of a just and reasonable inference."  *Id.*  The

26  burden then shifts to the employer to show the precise number of hours worked or to present

1   evidence sufficient to negate "the reasonableness of the inference to be drawn from the

2   employee's evidence." *Id.* If the employer fails to make such a showing, the court "may then

3   award damages to the employee, even though the result be only approximate." *Id.* "[A]n award

4   of back wages will not be barred for imprecision where it arises from the employer's failure to

5   keep records as required by the FLSA." *Id.; see also Hernandez v. Mendoza*, 199 Cal. App. 3d

6   721 (1988) (quoting and applying standard set forth in *Brock*).

7          Under that burden-shifting framework, plaintiff has produced sufficient evidence to

8   show, as a matter of a just and reasonable inference, the amount and extent of the work that

9   should have been compensated but was not. *See Solis v. United Buffet, Inc*., 2012 WL 669867, at

10  *4 (N.D. Cal. Feb. 29, 2012); *Rivera v. Rivera*, 2011 WL 1878015, at *6 (N.D. Cal. May 17,

11  2011) (finding employee declarations approximating the amount of overtime worked sufficient

12  to support an award for unpaid overtime); *Ulin*, 2011 WL 723617, at *13 (N.D. Cal. Feb. 23,

13  2011) (approximating overtime due where few records were kept). Specifically, plaintiff offered

14  evidence that he traveled from defendants' shop to each of the job sites listed in plaintiff's

15  Revised Table 1, and back to the shop on the dates listed in that table. Dckt. No. 96-1. Plaintiff

16  also offered evidence approximating the amount of time it would have taken plaintiff to travel

17  between the shop (or plaintiff's home) and the job sites on each of those dates. *See* Dckt. No.

18  96-2 (summarizing Mr. DuFour's testimony, in which he admitted that his own payroll

19  documents show where plaintiff was working and further admitted the amount of time it would

20  have taken plaintiff to travel to each of those locations in the van). Defendants have not

21  presented evidence regarding the precise number of hours worked, nor have they presented

22  evidence sufficient to negate the reasonableness of the inference to be drawn from plaintiff's

23  evidence. Therefore, although the court acknowledges that the total number of hours claimed is

24  by necessity an estimation, plaintiff is entitled to compensation for all of the hours listed in

25  plaintiff's Revised Table 1, Dckt. No. 96-1.

26  ////

2. <u>Liquidated Damages</u>

Plaintiff also seeks liquidated damages under the FLSA.  An employer who violates the FLSA is liable for liquidated damages equal to the amount of unpaid compensation.  29 U.S.C. § 216(b).  However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof . . . ."  29 U.S.C. § 260. "Under 29 U.S.C. § 260, the employer has the burden of establishing subjective and objective good faith in its violation of the FLSA."  *Local 246 Utility Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 297-98 (9th Cir. 1996).  Thus, defendants have the burden of establishing that they had "an honest intention to ascertain and follow the dictates of the Act" and had "reasonable grounds for believing that [their] conduct complie[d] with the Act."  *Id.* (quoting *Marshall v. Brunner*, 668 F.2d 748, 753 (3rd Cir. 1982).  If defendants fail to carry that burden, liquidated damages are mandatory.  *See EEOC v. First Citizens Bank*, 758 F.2d 397, 403 (9th Cir. 1985).  If defendants succeed in carrying the burden, the court may still award liquidated damages in its discretion.  *Local 246 Utility Workers Union of Am.*, 83 F.3d at 298. "Double damages are the norm, single damages the exception. . . ."  *Id.* at 297 (quoting *Walton v. United Consumers Club*, Inc., 786 F.2d 303, 310 (7th Cir. 1986)).

Here, defendants' post-trial brief does not respond to plaintiff's claim for liquidated damages.  *See generally* Dckt. No. 95.  Nor did defendants present sufficient evidence at trial demonstrating defendants' "honest intention to ascertain and follow the dictates of the Act" or their "reasonable grounds for believing that [their] conduct complie[d] with the Act."  Although they argue that plaintiff was responsible for keeping track of his hours and that the hours he claimed were never reduced, plaintiff did not record or claim the hours addressed herein because of defendants' policy that he not do so.  Additionally, although defendants contend that they had no notice of the violations since plaintiff never complained to them about it, defendants were

aware that the van was being used for the purposes that it was and that plaintiff was driving the van between the shop and the job sites nearly every work day.  Defendants provided no evidence regarding their intentions or beliefs with regard to the FLSA.  Therefore, plaintiff is also entitled to liquidated damages under the FLSA.

>    D.   Plaintiff's Second Cause of Action for Violation of Wage Order 16-2001 and
>         California Labor Code sections 203, 204.3, 510, and 1810 *et seq*.

Plaintiff also contends that he is entitled to compensation under California law.  Dckt. No. 94 at 19-21.  Specifically, plaintiff contends that the time he spent transporting tools, materials, and sometimes workers to job sites was compensable since defendants required plaintiff to drive the van to the job sites and since plaintiff could not do the job without that van. *Id.* at 20.  Plaintiff also argues that defendants had an obligation to maintain records establishing the accurate hours worked by plaintiff, and their failure to do so results in a shift of the burden of proof from plaintiff to defendants.  *Id.* (citing 8 Cal. Code Regs. § 11160(6)(a)(1); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1189 (2008); *Hernandez v. Mendoza*, 199 Cal. App. 3d 721, 726-28 (1988)).  Plaintiff contends that California law provides two important additions to federal law: (1) under California law, plaintiff is entitled to overtime after eight hours in one day, and (2) under California Labor Code section 203, plaintiff is entitled to thirty days of back wages for waiting time because he was not initially paid.

>    1.   Entitlement to Overtime Compensation Under California Law

The Industrial Welfare Commission (IWC) "is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California." *Tidewater Marine Western, Inc. v. Bradshaw,* 14 Cal. 4th 557, 561 (1996).  "IWC has promulgated 15 [industry and occupation wage] orders – 12 orders cover specific industries and 3 orders cover occupations – and 1 general minimum wage order which applies to all California employers and employees (excluding public employees and outside salesmen)." *Monzon v. Schaefer Ambulance Service, Inc*., 224 Cal. App.3d 16, 29 (1990).  Wage Order 16-2001,

8 Cal. Code Regs. § 11160, provides that "employees . . . shall not be employed more than eight (8) hours in any workday, or more than forty (40) hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours in the workweek.  Employment beyond eight (8) hours in any workday, or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime . . . ." *See also* Cal. Lab. Code § 1810 ("Eight hours labor constitutes a legal day's work in all cases where the same is performed under the authority of any law of this State, or under the direction, or control, or by the authority of any officer of this State acting in his official capacity, or under the direction, or control or by the authority of any municipal corporation, or of any officer thereof."); Cal. Lab. Code § 510(a) (providing that any work in excess of eight hours in one workday, any work in excess of 40 hours in any one workweek, and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee; any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee; and any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee).

Under California Labor Code section 1194(a), "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Additionally, under California Labor Code section 204.3(a), "[a]n employee may receive, in lieu of overtime compensation, compensating time off at a rate of not less than one and one-half hours for each hour of employment for which overtime compensation is required by law.  If an hour of employment would otherwise be compensable at a rate of more than one and one-half times the employee's regular rate of compensation, then the employee may receive compensating time off commensurate with the higher rate."

California employers must satisfy the federal or state overtime compensation requirements that are more protective of employees.  29 U.S.C. § 218(a); 29 C.F.R. § 778.5; *Aguilar v. Ass'n for Retarded Citizens*, 234 Cal. App. 3d 21, 34-35 (1991); *Pac. Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1426-27 (9th Cir. 1990).  The employee bears the burden of proving that he or she was improperly compensated for work performed.  *Eicher v. Advanced Bus. Integrators, Inc.*, 151 Cal. App. 4th 1363, 1377 (2007).

"'Hours worked' means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  8 Cal. Code Regs. § 11140(2)(G); *Morrillon v. Royal Packing Co.*, 22 Cal. 4th 575, 577-78 (2000) (finding that where employer required employees to meet at designated places to take its buses to work and prohibited them from using their own transportation, they were "subject to the control of an employer," and the time spent traveling on the buses was compensable as "hours worked").

The court finds that the time plaintiff spent at defendants' shop and traveling between defendants' shop and the job sites is compensable under California law since he was "suffered or permitted to work" during that time.  Additionally, as discussed above, loading the van at defendants' shop and/or supply house and driving it to the job sites, and then returning the van to the shop at the end of the day, was for defendants' benefit and was under defendants' control and direction.  Accordingly, plaintiff is entitled to overtime compensation under California law for any time plaintiff spent conducting the activities set forth in plaintiff's Revised Table 1,[11] when such time exceeded eight hours in any one workday, 40 hours in any one workweek, or

---

[11] California courts also apply a burden-shifting approach for calculating the number of uncompensated hours similar to the approach discussed above with regard to the FLSA.  *See Rodriguez v. Wallia*, 2012 WL 1831579, at *2 (N.D. Cal. Apr. 18, 2012) (citing *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1189 (2008)).  Therefore, as with the FLSA above, plaintiff has met his burden of establishing that the hours reflected in Revised Table 1 are a reasonable estimate of the number of uncompensated hours worked, and defendants have not sufficiently rebutted plaintiff's evidence.

1    constituted work on the seventh day in any one workweek  *See* Cal. Lab. Code 510(a), 1194(a)

2                      2. Waiting Time Penalties

3            Plaintiff also seeks waiting time penalties under California Labor Code section 203.[12]

4    Pursuant to California Labor Code section 203(a), "[i]f an employer willfully fails to pay,

5    without abatement or reduction, . . . any wages of an employee who is discharged or who quits,

6    the wages of the employee shall continue as a penalty from the due date thereof at the same rate

7    until paid or until an action therefor is commenced; but the wages shall not continue for more

8    than 30 days."  Such a payment is mandatory if the violation is willful.  *See Ulin v. ALAEA-72,*

9    *Inc.*, 2011 WL 723617, at *16.  "A willful failure to pay wages within the meaning of Labor

10   Code Section 203 occurs when an employer intentionally fails to pay wages to an employee

11   when those wages are due."  8 Cal. Code Regs. § 13520.  However, "[a] 'good faith dispute' that

12   any wages are due occurs when an employer presents a defense, based in law or fact which, if

13   successful, would preclude any recovery on the part of the employee.  The fact that a defense is

14   ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."  *Id.*  But,

15   "[d]efenses presented which, under all the circumstances, are unsupported by any evidence, are

16   unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'"  *Id.*

17   This standard differs in subtle ways from that applicable under the FLSA.  While the difference

18   is subtle, it is significant here.

19           Although, as discussed above, defendants did not present sufficient evidence at trial

20   demonstrating their honest intention *to ascertain and follow* the dictates of the FLSA, they did

21   present sufficient evidence demonstrating that they did not *willfully* fail to pay plaintiff the

22   wages due to him under the FLSA or California law.  To the contrary, defendants paid plaintiff

23   for all the hours sought and never reduced his pay.  Because the court does not find that

24   defendants' failure to pay plaintiff for the wages addressed herein was willful, plaintiff is not

25   _____

26        [12] Defendants' post-trial brief does not respond to plaintiff's claim for waiting time
     penalties.  *See generally* Dckt. No. 95.

                                            24

1   entitled to waiting time penalties under California Labor Code section 203.  *See Ulin v.*

2   *ALAEA-72, Inc.*, 2011 WL 723617, at *16.

3        E.  <u>Plaintiff's Third Cause of Action for Violation of California Labor Code section 226</u>

4        Plaintiff also seeks penalties under California Labor Code section 226 because he

5   contends he was provided with inadequate wage statements.  *See* Dckt. No. 94 at 20-21.  Plaintiff

6   contends that the wage statements provided by defendants do not meet the statutory requirements

7   since they do not indicate the total number of hours worked at each wage rate or category of

8   compensation, and are incorrect because of the failure to pay all wages due.  *Id.* at 21.

9        California Labor Code section 226(a) requires an employer to furnish at the time each

10  payment of wages is made a wage statement showing, among other things, the gross wages

11  earned, the total hours worked, all applicable hourly rates and deductions.  Cal. Lab. Code

12  § 226(a).  If the wage stubs are inadequate, an employee may bring an action for injunctive

13  relief.  *Id.* § 226(h).  Additionally, if the violation of section 226(a) was "knowing and

14  intentional," the employee may also recover the greater of all actual damages or $50 for the

15  initial pay period in which a violation occurs and $100 per employee for each violation in a

16  subsequent pay period, not exceeding an "aggregate penalty" of $4,000.  Cal. Lab. Code

17  § 226(e).  Employees may also recover costs and reasonable attorney fees.  *Id.*

18       Here, even assuming that the wage stubs were inadequate under section 226(a), plaintiff

19  has not shown that the failure to comply with section 226(a) was either knowing or intentional.

20  Therefore, plaintiff is not entitled to penalties pursuant to section 226(e).  And, since plaintiff

21  does not seek injunctive relief, plaintiff is not entitled to any relief on his claim under California

22  Labor Code section 226.

23  V.  <u>CONCLUSION</u>

24       Based upon the Findings of Fact and Conclusion of Law set forth above, plaintiff is

25  entitled to judgment in his favor and against both defendants, jointly and severally, on Claim

26  One (FLSA), and judgment partially in his favor and against defendant DuFour Enterprises, Inc.

on Claim Two (plaintiff is entitled to overtime compensation under California law but not waiting time penalties).  Defendants are entitled to judgment in their favor on Claim Three (California Labor Code section 226).

Although plaintiff sets forth a total amount he opines is the proper judgment (excluding attorney's fees and costs), *see* Pl.'s Revised Table 3, in light of the rulings herein, the parties shall provide the court with additional briefing regarding the appropriate calculation of damages to be awarded.  Within fourteen days of the date of this order, the parties are ordered to submit a joint brief of no more than ten pages setting forth their respective positions regarding the exact amount of damages to be awarded based on these Findings of Fact and Conclusions of Law.

SO ORDERED.

DATED:  September 28, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE